# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

EHR AVIATION, INC.,
a Delaware corporation,

                              Plaintiff,

vs.                                                 Case No. 3:09-cv-210-J-32TEM

STARWOOD AVIATION, INC.,
a Nevada corporation; and
CRAIG LAWSON, individually,

                              Defendants.

_____

## ORDER

This case is before the Court on Plaintiff's Amended Motion for Default Judgment (Doc. 12). Defendant Starwood Aviation, Inc. ("Starwood"), which appears to have been properly served,[1] has not filed an appearance in this action.[2] The Clerk entered a default against Starwood on April 9, 2009 (Doc. 6), and Plaintiff now seeks a final default judgment against Starwood in the amount of $8,768,423.68.

The well-pleaded factual allegations made in Plaintiff's Complaint (Doc. 1) are deemed admitted by Starwood by virtue of the Clerk's entry of default. Cotton v. Mass Mut. Life Ins. Co., 402 F.3d 1267, 1277-78 (11th Cir. 2005)(citations omitted). However, "[a]lthough a defaulted defendant admits well-pleaded allegations of liability, allegations

_____

[1] See Doc. 12-1.

[2] Nor has individual co-defendant Craig Lawson. The Court recently granted Plaintiff's request for an enlargement of time to obtain service on Lawson, (Doc. 13), who is not the subject of the instant Motion.

relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F.Supp. 2d 1342, 1346 (M.D. Fla. 1999). Thus, even where a default judgment is warranted, the Court may first hold a hearing for the purposes of assessing damages. Fed.R.Civ.P. 55(b)(2); see also SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, such a hearing is not necessary if the record contains sufficient evidence to support the request for damages. Id.

The requested damages in this case arise from a series of lending transactions between Plaintiff and Starwood. Between 2005 and 2007, Plaintiff lent Starwood a total of $10,244,750 for the purchase of four aircraft.[3] According to Plaintiff, the loan amounts were calculated "based on the standard industry practice of the borrower providing the lender with the full description and specifications of the aircraft to be financed, including make, model, serial number, registration and all of the equipment and accessories associated with the aircraft." (Doc. 12 at ¶ 7b). Plaintiff then employed third-party appraisal companies to conduct fair market value assessments of each aircraft based upon the information provided, and loaned Starwood 80 to 85% of the appraised value of each aircraft. The terms of each loan were memorialized in a Promissory Note and a corresponding Commercial Security

---

[3]The loans were made for the purchase of the following aircraft and in the following amounts: $3,064,000 towards the purchase of a 1978 Gulfstream II aircraft, FAA registration number N10RQ ("N10RQ"); $2,340,000 towards the purchase of a 1976 Gulfstream II aircraft, FAA registration number N195AR ("N195AR"); $2,460,750 towards the purchase of a 1968 Gulfstream II aircraft, FAA registration number N169HM ("N169HM"); and $2,380,000 towards the purchase of a 1968 Gulfstream II aircraft, FAA registration number N747NB ("N747NB").

Agreement.  (Doc. 1, Ex. A-I).

Starwood defaulted on all four loans in February of 2008, after which Plaintiff reclaimed the airplanes and found them to be in substantially poorer condition than had been represented by Starwood at the time the loans were made.[4]  Two planes in particular - NR10Q and N195AR - were not in airworthy condition at the time of their return; Plaintiff determined that neither plane could be salvaged and subsequently dismantled both to sell for parts.  Plaintiff has provided documentation showing that it expended $106,614.00 to dismantle N10RQ and $80,370.00 to dismantle N195AR.  (Doc. 12-2, Ex. 2, 5).  Plaintiff has also provided the affidavit of its Vice President, Edward Rothen, who estimates the value of the sellable parts at $375,000.00 for N10RQ and $750,000.00 for N195AR (Doc. 12-2 "Amended Affidavit of Edward Rothen" at ¶¶ 2a, 3e).  For both N10RQ and N195AR, Plaintiff seeks to recover the unpaid loan principal, unpaid interest, and any amounts spent to dismantle the planes, less the estimated worth of the sellable parts.

The remaining planes, N169HM and N747NB, were also reclaimed in unairworthy condition.  Plaintiff has provided documentation that it expended $319,378.00 and $252,000.00 in repair costs, respectively, to return both planes to airworthiness. (Doc. 12-3, Ex. 8; Doc. 12-4, Ex. 11).  Despite their current airworthy status, Plaintiff asserts that the values of N169HM and N747NB are substantially less than their appraised values at the time

---

[4] Each Promissory Note contained a provision requiring Starwood to maintain the aircraft in good order and airworthy condition.  As a result, Plaintiff asserts that Starwood is in breach of contract under each Promissory Note.  Plaintiff also asserts that Starwood provided fraudulent information regarding the pre-appraisal condition of each plane which led to an improper inflation of their fair market value.

the loans to Starwood were made, and seeks to recover the unpaid loan principal, unpaid interest, and any amounts spent to return N169HM and N747NB to airworthiness, less the current estimated worth of the planes.

On November 22, 2005, N169HM was appraised by AMS Appraisals and Valuations, Inc. (Doc. 12-3, Ex. 7). The AMS report noted that "[b]ased on current pricing data available through industry publications such as the *Aircraft Price Digest, Vref,* and the *International Aircraft Price Guide*, the base average retail price for a 1968 Gulfstream GII is approximately $1,600,000." (Id. at 1). Considering such value-adding factors as N169HM's airframe total time, cycle rate, installed equipment, airframe modifications, engine status, and the prevailing market conditions for Gulfstream GII aircraft, AMS concluded that "it is reasonable to suggest that [N169HM] can support a fair market value (FMV) of $2,895,000." (Id. at 2).

Despite having returned N169HM to airworthiness, Plaintiff contends that "[p]ursuant to industry guides V-Ref and Aircraft Blue Book Price Digest, the estimated worth of N169HM is $550,000," and that the aircraft is currently on the market at that price. (Doc. 12 at ¶ 9f). Thus, Plaintiff asserts that N169HM is worth approximately $2,345,000 less than it appraised for in 2005, and $1,050,000 less than the base average retail price quoted by the same industry guides from which Plaintiff now culls the aircraft's current value. Plaintiff provides no explanation for this precipitous drop in N169HM's fair market value, nor a reason why the aircraft's return to airworthiness would not restore it to at or near either the $1,600,000 or $2,895,000 figures.

Likewise, on April 26, 2005, N747NB was appraised by AMS Appraisals and Valuations, Inc. (Doc. 12-4, Ex. 10). Considering such factors as N747NB's airframe total

4

time, cycle rate, installed equipment, inspection status, enrollment in Gulfstream's CMP maintenance tracking program, and the prevailing market conditions for Gulfstream GII aircraft, AMS concluded that "it is our opinion that [N747NB] can support a current Fair Market Value of $3,000,000." (Id.) AMS cautioned, however, that this value was contingent on a number of additional hypothetical conditions (including new paint, interior refurbishment and installation of certain mechanical equipment), which if unmet would cause "a negative affect to the value stated in this report." (Id.)

Despite having returned N747NB to airworthiness, Plaintiff contends that "[p]ursuant to industry guides V-Ref and Aircraft Blue Book Price Digest, the estimated worth of N747NB is $650,000," and that the aircraft is currently on the market at that price. (Doc. 12 at ¶ 10f). This current value is $2,350,000 less than the aircraft appraised for in 2005. As with N169HM, Plaintiff provides no explanation for the precipitous drop in N747NB's value, nor a reason why the aircraft's return to airworthiness would not restore it to at or near the 2005 appraised figure.

With regard to N10RQ and N195AR, Plaintiff has provided sufficient documentary evidence to support a default judgment against Starwood for the unpaid loan principal, unpaid interest, and any amounts spent to dismantle the planes, less the estimated worth of the sellable parts. However, with regard to N169HM and N747NB, Plaintiff has only provided sufficient documentary evidence to support a default judgment against Starwood for the cost of returning those planes to airworthy condition. Absent additional documentation that would support Plaintiff's current valuation of N169HM and N747NB, Plaintiff cannot properly recover for the diminution in value of those planes.

The Court requests that Plaintiff prepare a proposed final default judgment order setting forth the most current amounts of the unpaid principal and unpaid interest on the loans for N10RQ and N195AR, amounts spent to dismantle N10RQ and N195AR, and attorney's fees and costs, less the estimated worth of their sellable parts. With regard to N169HM and N747NB, Plaintiff may accept the Court's decision and use it in calculating its proposed final default judgment, or provide additional documentation supporting the diminution in the value of these aircraft (such as proof of their sale, if applicable). Upon receipt, the Court will take final action on the Amended Motion.

Accordingly, it is hereby

**ORDERED**:

1. The Court **RESERVES RULING** on Plaintiff's Amended Motion for Default Judgment (Doc. 12).

2. Plaintiff shall file a proposed default judgment order with the Court, as well as any additional supporting documentation, no later than **February 1, 2010.**

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of December, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

jmm.
Copies:

counsel of record